UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENTER FOR JUDICIAL ACCOUNTABILITY, INC.; ELENA RUTH SASSOWER, <br><br> *Plaintiffs*, <br><br> v. <br><br> LEGISLATIVE CORRESPONDENTS' ASSOCIATION, *et al.*, <br><br> *Defendants*. | No. 25-CV-8370 (KMK) <br><br> ORDER OF DISMISSAL |

KENNETH M. KARAS, United States District Judge:

On October 8, 2025, Plaintiff Elena Sassower ("Sassower"), proceeding pro se, along with the Center for Judicial Accountability, Inc. ("CJA") (together "Plaintiffs") brought this Action, alleging the 34 Defendant media outlets and journalism-related entities (collectively "Defendants") conspired to commit "journalistic fraud," "institutional reckless disregard for truth," and "defraud[ed] purchasers, contributors, [and] taxpayers" in violation of the First Amendment to the United States Constitution. (Pl.'s Am. Compl. ("FAC") ¶¶ 67–80 (Dkt. No. 6).) For the reasons set forth below, this Action is dismissed for lack of subject matter jurisdiction.

## I.  Factual & Procedural Background

On November 13, 2025 the Court ordered Plaintiffs to show cause as to why this Action should not be dismissed for lack of subject matter jurisdiction. (*See* Order to Show Cause (Dkt. No. 8).) On November 24, 2025, Sassower filed a letter regarding the Court's November 13, 2025 Order. (*See* Letter from Pl. Elena Sassower to Court (Nov. 24, 2025) (Dkt. No. 10).) In

response, the Court issued a second Order on December 5, 2025.  (*See* Order (Dkt. No. 10).)

Plaintiffs subsequently filed two affidavits and letters in response to the Court's December 5,

2025 Order.  (*See* Pl.'s Aff. Subject Matter J. (Dkt. No. 13); Letter from Pl. Elena Sassower to

Court (Dec. 29, 2025) (Dkt. No. 14); Aff. of Elena R. Sassower (Dkt. No. 15); Letter from Pl.

Elena Sassower to Court (Jan. 5, 2026) (Dkt. No. 17); Letter from Pl. Elena Sassower to Court

(Jan. 5, 2026) (Dkt. No. 18).)

## II.  Analysis

As the Court previously explained, "[f]ederal courts are courts of limited jurisdiction[,]"

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and Article III of the Constitution

limits their jurisdiction to "[c]ases" and "[c]ontroversies" arising under the Constitution, U.S.

Const. art. III, § 2, cl. 1.  "Constitutional standing refers to the requirement that parties suing in

federal court establish that a '[c]ase' or '[c]ontroversy' exists within the meaning of Article III of

the United States Constitution."  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F. 3d

352, 358 (2d Cir. 2016).  Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a
> legally protected interest which is (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical,"; (2) that there is "a causal connection
> between the injury and the conduct" of which the plaintiff complains; and (3) that
> it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61

(1992)).  "The party invoking federal jurisdiction bears the burden of establishing these

elements."  *Lujan*, 504 U.S. at 561.  "A federal court is obliged to assure itself that a plaintiff has

standing and must dismiss a complaint if at any time it determines that the plaintiff cannot carry

his burden to prove standing."  *Dubois v. Maritimo Offshore Pty Ltd.* , 422 F. Supp. 3d 545, 555

(D. Conn. 2019) (citing *Frank v. Gaos*, 586 U.S. 485, 492 (2019); *Spokeo, Inc. v. Robins*, 578

U.S. 330, 338 (2016)); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) ("We

have 'an obligation to assure ourselves of litigants' standing under Article III.'" (quoting *Friends of the Earth v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180 (2000)); Fed. R. Civ. P. 12(h)(3) (allowing courts to dismiss an action sua sponte for lack of subject matter jurisdiction).  After reviewing Plaintiffs' submissions in response to the Court's previous Orders, the Court determines that Plaintiffs lack standing to bring this Action for several reasons.

A.  Injury in Fact

First, Plaintiffs lack a legally cognizable "injury in fact" as required to establish standing. In detailing her alleged injury, Sassower claims that "the corruption of New York's judiciary . . . and the complicity of the press, including many [of the Defendants], destroyed the lives and professional careers of her . . . parents," which, in turn, "destroy[ed] and derail[ed] [Sassower's] own life and career[] beginning when she was a child[,] and she is now 69."  (FAC ¶ 95(a).) However, any injury suffered by Sassower's parents does not give her standing to bring this Action because an alleged constitutional violation "is entirely personal to the direct victim of the alleged constitutional tort, and therefore 'no cause of action [based on it] may lie . . . for . . . consequent collateral injuries allegedly suffered personally by the victim's family members.'" *Rzayeva v. United States*, 492 F. Supp. 2d 60, 83–84 (D. Conn. 2007) (citation and quotation marks omitted); *see also Collins v. W. Hartford Police Dep't*, 324 F. App'x 137, 139 (2d Cir. 2009) (summary order) ("[The plaintiff] has no standing to challenge constitutional deprivations alleged to have been experienced by his mother."); *Kamal v. Pressler, Felt & Warshaw, LLP*, No. 23-CV-10487, 2025 WL 919505, at *5 (S.D.N.Y. Mar. 25, 2025) (dismissing the plaintiff's claims because he "d[id] not have standing based solely on an injury to his wife."); *Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 568 (S.D.N.Y. 2012) ("It is well-settled that standing . . . is not conferred solely on the basis of harm to [a] plaintiff's family member."); *TC*

*v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 589 (S.D.N.Y. 2011) ("Jurisdiction cannot be invoked solely on the basis of harms to a member of [the] plaintiffs' family.").  Although Sassower also claims to have been harmed, "[c]onclusory allegations of injury and nebulous claims of emotional harm, like the ones found in Plaintiff[s'] [First Amended] Complaint[], are insufficient to confer standing." *Whitehead v. Grant & Weber, Inc.*, Nos. 22-CV-6340, 22-CV-6524, 2022 WL 19762152, at *3 (E.D.N.Y. Dec. 30, 2022), *report and recommendation adopted* 2023 WL 3260029 (E.D.N.Y. May 4, 2023); *Fullwood v. Wolfgang's Steakhouse, Inc.*, No. 13-CV-7174, 2017 WL 377931, at *6 (S.D.N.Y. Jan. 26, 2017) ("[N]ondescript and conclusory allegations of injury are not the type of general factual allegations from which the [c]ourt may presume the specific facts necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." (citation and quotation marks omitted)); *cf. Szabados v. Drzewiecki*, No. 23-CV-2505, 2025 WL 958908, at *8 (E.D.N.Y. Feb. 14, 2025) ("To satisfy this standing requirement, [the] [p]laintiff must demonstrate *how* [the] [d]efendants' statutory violation resulted in concrete harm." (emphasis added; citation omitted)).  Without providing details as to how Defendants' conduct "destroy[ed] and derail[ed]" her "life and career[,]" (FAC ¶ 95(a)), Sassower has not pled sufficient facts to plausibly allege she suffered a concrete and particularized injury-in-fact.  *See Guglielmo v. Neb. Furniture Mart, Inc.*, No. 19-CV-11197, 2020 WL 7480619, at *4 (S.D.N.Y. Dec. 18, 2020) (finding the "[p]laintiff's allegations lack[ed] 'all the requisite specificity' necessary to establish an injury in fact" when he did not allege the specific details of the harm he suffered); *Fullwood*, 2017 WL 377931, at *6 (finding the plaintiff's "conclusory allegation that [she] was 'damaged' by [the] [d]efendants' conduct and [her] generalized allegation parroting

[the statutory cause of action]'s purpose statement . . . plainly insufficient to plead plausibly that [the] [p]laintiff suffered a concrete and particularized injury" (citations omitted)).

CJA's allegations of harm fare no better. It claims Defendants' "violation of First Amendment responsibilities and journalistic codes by the press, including most of the [D]efendants herein, has meant that all of [CJA]'s hard, painstaking work, spanning more than three decades, has brought no corruption-eradicating changes[] when even a modicum of press adherence to such responsibilities and codes . . . could have brought sweeping[,] corruption-eradicating changes," (FAC ¶ 95(b)), but this alleged injury is too remote and speculative to constitute an injury in fact. Even Plaintiffs acknowledge the speculative nature of CJA's alleged injury: they argue that had Defendants reported on Plaintiffs' view of New York politics and governance, it "*could* have brought sweeping[,] corruption-eradicating changes," (*id.* (emphasis added)), but this language is necessarily speculative, and the Supreme Court has established that when "plaintiffs rel[y] 'on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had [the] defendants acted otherwise,'" such "unadorned speculation will not suffice to invoke federal judicial power[,]" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976) (alteration adopted) (quoting *Warth v. Seldin*, 422 U.S. 490, 507 (1975)); *see also Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 357 (S.D.N.Y. 2018) (finding the plaintiff lacked standing because his "alleged injury is highly speculative" since he "assumes that if the alleged conspiracy did not exist, his work would appear in the defendant museums and become more valuable[,]" but "the plaintiff provides no reason to infer that the defendant museums would in fact purchase and display his art but for the alleged conspiracy."); *Stallworth v. New York*, No. 16-CV-3059, 2017 WL 4355897, at *12 (S.D.N.Y. July 27, 2017) ("[The] plaintiff's conjecture that he might have obtained an even more

lucrative job at yet another agency . . . cannot substitute for the 'distinct and palpable injury' required for constitutional standing." (quoting *Warth*, 422 U.S. at 501)), *report and recommendation adopted* 2017 WL 4342148 (S.D.N.Y. Sept. 28, 2017).

CJA also claims that "[t]he near total press suppression of any report of [its] work, other than in minimizing, deprecating terms, deprived it of any public profile and appreciation [] and all the benefits flowing therefrom[,]" (FAC ¶ 95(b)), but "the constitutional right of free speech has never been thought to embrace a right to require a journalist or any other citizen to listen to a person's views, let alone a right to require a publisher to publish those views in his newspaper," *Pell v. Procunier*, 417 U.S. 817, 821–22 (1974) (collecting cases); *Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991) ("[A]n individual has no right to force a private publication to air his . . . views . . . ." (collecting cases)); *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 260 (S.D.N.Y. 2024) ("[O]ne important manifestation of the principle of free speech, guaranteed by the First Amendment, is that one who chooses to speak may also decide what not to say." (quotation marks omitted) (quoting *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995)). Accordingly, because CJA has no legally cognizable right to favorable press coverage of its work, it cannot assert an injury-in-fact on this basis. *See True Velocity Ammunitions, LLC v. Sig Sauer, Inc.*, No. 24-CV-552, 2024 WL 4583118, at *6 (D. Vt. Oct. 25, 2024) ("To have standing, a plaintiff must establish 'an injury in fact, defined as an invasion of a legally protected interest.'" (quoting *Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge*, 98 F. 4th 386, 391 (2d Cir. 2024)); *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01-CV-2272, 2004 WL 35439, at *14 (S.D.N.Y. Jan. 6, 2004) ("To have standing to bring suit, a party must allege an injury in fact to a preexisting, legally protected interest."); *Yonkers Comm'n on Hum. Rts. v. City of Yonkers*, 654 F. Supp. 544, 553 (S.D.N.Y.

1987) ("The doctrine of standing is of course well established to require that the party who wishes to bring suit must have suffered an injury to a legally protected right, an 'injury in fact.'") (collecting cases)).

Plaintiffs also point to *Orthodox Jewish Coalition of Chestnut Ridge Village v. Village of Chestnut Ridge*, No. 19-CV-443, 2021 WL 1226930 (S.D.N.Y. Mar. 31, 2021) for the proposition that loss of membership satisfies the injury in fact requirement for Article III standing, (Letter from Elena Sassower to Court (Dec. 29, 2025) ¶ 10), but they gloss over a key difference between that case and the instant Action. While the plaintiff organizations in *Orthodox Jewish Coalition* claimed the challenged conduct caused them to lose preexisting "members and membership dues as well as donations" from those individuals, *id.*, 2021 WL 1226930, at *14, Plaintiffs do not allege that CJA had any members, donations, or dues-derived revenue to begin with, (*see generally* FAC). Plaintiffs' own allegation that Defendants' coverage of CJA's work "deprived [CJA] of *any* public profile and appreciation [] and *all* benefits flowing therefrom to its development as a non-partisan, non-partisanship citizens' organization," (*id.* ¶ 95(b) (emphases added)), tacitly confirms this detail. Accordingly, CJA's alleged loss of members and financial injury are not sufficiently concrete to confer standing. *See Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *7 (E.D.N.Y. Sept. 9, 2013) (holding the plaintiffs lacked standing because they "d[id] not allege they have actually lost any of their deposited funds, and [one of the plaintiffs] readily concede[d] that he has not lost any of his money"); *Bernshteyn v. Feldman*, No. 04-CV-1774, 2006 WL 2516514, at *5 (S.D.N.Y. Aug. 29, 2006) ("[The] plaintiffs do not allege that they have parted with any money . . . . In the absence of an allegation that they have suffered any actual financial harm, [the] plaintiffs have failed to allege that they suffered any compensable injury traceable to [the defendant].").

7

Lastly, Plaintiffs claim to bring this Action on behalf of the People of the State of New York who

> have been kept 'clueless' by their 'free press' as to how they have been betrayed by their elected and appointed constitutional officers in their three government branches whose flagrant violations of their oaths of office, the state Constitution, laws, and rules, steal their money, . . . and enact and enable the enactment of policies, without legislative due process and by fraud, including as relates to elections . . . .

(FAC ¶ 95(c)). However, as explained in this Court's November 13, 2025 Order, Sassower's pro se status precludes her from litigating on behalf of anyone except herself. (*See* Order to Show Cause 2–3 (explaining that pro se litigants cannot bring suit on behalf of anyone besides themselves)); *Jefferson v. MTA*, No. 25-CV-5074, 2026 WL 765616, at *3 (S.D.N.Y. Mar. 18, 2026) ("[I]t appears that [the] [p]laintiff seeks relief on behalf of others in the Harlem community, or on behalf of the community at large. However, courts consistently hold that a pro se litigant does not have standing to sue on behalf of others." (citation omitted) (collecting cases)); *Brown v. Cook*, No. 20-CV-864, 2020 WL 5659387, at *5 (D. Conn. Sept. 23, 2020) ("The Supreme Court has consistently held that a pro se litigant does not have standing to sue on behalf of other litigants." (emphasis omitted) (collecting cases)). Additionally, as explained in the Court's November 13, 2025 Order, Plaintiffs cannot rely on harm suffered by the general public to establish standing because the injury in fact must be particularized to the individuals bringing a case. *See Piccolo v. N.Y.C. Bd. of Elections*, No. 25-CV-2617, 2025 WL 3043619, at *7 (S.D.N.Y. Oct. 31, 2025) ("To confer standing, an injury must be particularized; in other words, it 'must affect the plaintiff in a personal and individual way.'" (quoting *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45–46 (2d Cir. 2023)); *Carney v. Adams*, 592 U.S. 53, 59 (2020) ("[A] plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to

vindicating that general interest on behalf of the public." (citations and quotation marks omitted)).

Further, as explained above, Plaintiffs do not have a legally enforceable right—under the First Amendment or any other authority—to force Defendants to report on the topics of their choice, so they cannot claim injury to themselves or the general public on that basis. *See Grisales v. Forex Cap. Mkts. LLC*, No. 11-CV-228, 2011 WL 6288060, at *7 (S.D.N.Y. Dec. 9, 2011) (dismissing a claim for lack of standing because the "plaintiff fail[ed] to demonstrate pursuant to either of his enumerated theories of liability that he suffered injury to a legally protected interest as is necessary to establish his constitutional standing to bring suit against [the defendant]").

Lastly, although Defendants are not government actors, read broadly, Plaintiffs' First Amended Complaint intimates that Defendants worked alongside state actors to "conceal[] the unconstitutionality and unlawfulness of New York state governance [and to] protect[] the culpable public officers from the consequences of their crimes[] and in rigging elections." (FAC ¶ 92.) However, "[t]o the extent [Plaintiffs] seek[] to vindicate [their] general right[s] as . . . citizen[s] to object to government action, such an interest cannot confer Article [III] standing." *Jefferson*, 2026 WL 765616, at *3 (citations omitted); *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) ("The injury in fact requirement prevents the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.' . . . Article III does not contemplate a system where 330 million citizens can come to court whenever they believe that the government is acting contrary to the Constitution or other federal law." (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984))); *accord Lujan*, 504 U.S. at 576 (holding that "[v]indicating the public interest (including the public interest in [g]overnment

9

observance of the Constitution and laws) is a function of Congress and the Chief Executive," not the courts).

For the reasons set forth above, Plaintiffs have not pled an injury in fact as required to establish Article III standing.  Accordingly, Plaintiffs' claims must be dismissed for lack of standing.  *See Yanes v. Juan & Jon Inc.*, No. 19-CV-201, 2024 WL 1072034, at \*7 (E.D.N.Y. Mar. 11, 2024) (dismissing the plaintiff's claims sua sponte for lack of standing); *Clarkes v. Suffolk County*, No. 17-CV-2711, 2018 WL 11465339, at \*1 (E.D.N.Y. Oct. 23, 2018) (same).

B.  Causation

Beyond failing to allege a sufficient injury in fact, Plaintiffs have also failed to show their purported injuries are "fairly traceable to [Defendants'] allegedly unlawful conduct."  *Allen*, 468 U.S. at 751, *abrogated in part by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  "To have standing, in addition to a concrete injury, Plaintiff[s] must also establish 'that the injury is fairly traceable to Defendants' challenged conduct.'  In other words, Plaintiff[s] must establish that there is a 'causal nexus' between . . . Defendants' actions and [their] injury."  *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, No. 24-CV-4503, 2025 WL 1489603, at \*5 (E.D.N.Y. May 23, 2025) (citations omitted), *appeal pending* No. 25-1446 (2d Cir. June 9, 2025).  Here, Plaintiffs do not explain how Defendants' actions caused the "destr[uction] and derail[ment] of [Sassower's] life and career . . . ."  (FAC ¶ 95(a).)  Although Sassower "appears to believe that Defendants harmed her in some fashion, a 'plaintiff's beliefs—however strongly she may hold them—are not facts.'"  *Song v. Pres. & Trs. of Columbia Univ. in City of N.Y.*, No. 25-CV-2772, 2025 WL 1938737, at \*2 (S.D.N.Y. July 14, 2025) (alterations adopted) (quoting *Morren v. N.Y. Univ.*, No. 20-CV-10802, 2022 WL 1666918, at \*18 (S.D.N.Y. Apr. 29, 2022)); *see also Pesic v. Mauritius Int'l*

*Arb. Ctr. Ltd.*, No. 23-CV-1100, 2024 WL 4827610, at *2 (S.D.N.Y. Nov. 19, 2024) (finding the "[p]laintiff neither cites any specific harms he has suffered nor connects those harms to [the] [d]efendants' conduct").

Additionally, although Plaintiffs claim Defendants' "near total . . . suppression of any report of . . . CJA's work, other than in minimizing, deprecating terms, deprived [CJA] of any public profile and appreciation [] and all the benefits flowing therefrom[,]" (FAC ¶ 95(b)), "[c]onsistently, the Supreme Court, and countless lower courts, have held that plaintiffs fail to show traceability where their alleged injuries are caused by third parties' intervening conduct[,]" *Somosky v. Consumer Data Indus. Ass'n*, No. 20-CV-4387, 2022 WL 596480, at *3 (S.D.N.Y. Feb. 28, 2022) (collecting cases). "Although a plaintiff bears only a 'relatively modest' burden to show causation, that burden is harder to meet where 'traceability depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to either control or predict.'" *Conn. Parents Union v. Wentzell*, 462 F. Supp. 3d 167, 173 (D. Conn. 2020) (quoting, in the first instance, *Bennett v. Spear*, 520 U.S. 154, 171 (1997) and then *State v. U.S. Dep't of Comm.*, 315 F. Supp. 3d 766, 785 (S.D.N.Y. 2018)). Here, Plaintiffs assume that more favorable press coverage would necessarily have led unnamed third parties to contribute "membership and funding[,]" (FAC ¶ 95(b)), to CJA, making it a more robust non-profit organization, but they provide no factual allegations to make this a plausible claim, (*see generally id.*). As such, CJA's alleged injury is not fairly traceable to Defendants. *See Umeze v. N.Y. State Dep't of Health*, No. 24-CV-7425, 2025 WL 2733451, at *6 (S.D.N.Y. Sept. 25, 2025) ("[I]t is a bedrock principle that an injury is not fairly traceable to a defendant if it is the result of independent action by another party." (citing *Lujan*, 504 U.S. at 560)); *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of*

*Fin. Servs.*, 974 F. Supp. 2d 353, 358 (S.D.N.Y. 2013) ("With respect to traceability and redressability, a plaintiff needs to show that its injury is 'fairly traceable to the challenged action of the defendant—not the result of the *independent* action of some third party'—and that stopping the defendant's actions would therefore serve to mitigate or alleviate the harm." (alterations adopted) (quoting *Lujan*, 504 U.S. at 560–61)), *aff'd* 769 F. 3d 105 (2d Cir. 2014).

Lastly, Plaintiffs' alleged injuries cannot be said to be fairly traceable to Defendants when the language of their First Amended Complaint suggests that not all of the Defendants participated in the challenged conduct. (*See* FAC ¶ 95(a) (claiming "the corruption of New York's judiciary . . . and the complicity of the press, including many that are [D]efendants herein . . . destroy[ed] and derail[ed] [Sassower's] life and career"); *id.* ¶ 95(b) (claiming the alleged "violation of First Amendment responsibilities and journalist codes" was committed by "the press, including most of the [D]efendants herein")). In order to meet the causation requirement for Article III standing, "it is not enough for a plaintiff to show that someone caused the plaintiff an injury; instead, a plaintiff must show that the injury is fairly traceable to the named defendant[s,]" *Beatty v. Tong*, 659 F. Supp. 3d 219, 229–30 (D. Conn. 2023) (emphasis omitted), and a plaintiff must therefore provide more detail than lob a generalized allegation of causation at all named defendants, *see Wooten v. Ascend Labs., LLC*, No. 22-CV-3401, 2023 WL 1451562, at *4 (E.D.N.Y. Feb. 1, 2023) (dismissing the plaintiff's claim because she did not "explain how each defendant caused her harm" and noting it is "not sufficient to group [defendants]" when alleging causation).

Because Plaintiffs have failed to meet at least two of the requirements of constitutional standing, their claims are dismissed for lack of subject matter jurisdiction. *See Spira v. Trans Union, LLC*, No. 21-CV-2367, 2022 WL 2819469, at *6 (S.D.N.Y. July 19, 2022) (dismissing a

complaint sua sponte for lack of subject matter jurisdiction); *Plutzer ex rel. Tharanco Grp., Inc. Emp. Stock Ownership Plan v. Bankers Tr. Co.*, No. 21-CV-3632, 2022 WL 596356, at \*7 (S.D.N.Y. Feb. 28, 2022) (raising the issue of standing sua sponte and dismissing the plaintiff's claims because the "[p]laintiff ha[d] not made a showing of Article III standing sufficient to bring this suit"). The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiffs and close the case.

SO ORDERED.

Dated:   July 10, 2026
         White Plains, New York

KENNETH M. KARAS
United States District Judge

13